(25 Misc. Rep. 566.)

## TAYLOR v. TAYLOR.

(Supreme Court, Special Term. New York County. December, 1898.)

1. MARRIAGE—FORMER SPOUSE LIVING.

    Where a wife married a second time, believing her former husband, who had not been heard from for nine years, was dead, such marriage is voidable only, under 2 Rev. St. (Banks Bros.' 9th Ed.) pp. 1890, 1891, providing that a marriage by a person having a spouse living shall be void only from the time of annulment by a competent court, where such spouse shall have absented himself for five years, without being known by such person to be living.

2. SAME—CONSENT.

    Plaintiff and defendant were married under a belief that plaintiff's former husband, who had disappeared nine years before, was dead. He did not die, however, until seven years later, when, on learning of his death, defendant said to plaintiff, "That makes our marriage legal." They continued to live together for eleven years longer, defendant contributing to plaintiff's support, and each year they celebrated the wedding anniversary. Defendant at one time sued to recover realty standing in plaintiff's name, and declared on oath that she was his wife. *Held*

that, conceding plaintiff had not acted in good faith in contracting the second marriage, it was validated by defendant's consent after the first husband's death.

3. DIVORCE—ANNULMENT—COUNTERCLAIM.

Code Civ. Proc. § 1770, authorizing counterclaims in actions for divorce or separation, does not authorize a counterclaim to annul the marriage.

Suit by Catharine Taylor against Washington H. Taylor for separation and alimony. Decree for plaintiff.

Van Cott & Erskine, for plaintiff.

Lawrence, Semple & Clark, for defendant.

COHEN, J. The plaintiff sets out a cause of action for a separation on the ground of the defendant's cruelty, and his abandonment of, and neglect to provide for, her. The answer denies these allegations as framed, as well as the marriage, and avers by way of counterclaim that the marriage between the parties, being unlawful, should be annulled. The evidence establishes the following facts: In Providence, R. I., January 12, 1860, the plaintiff, whose maiden name was Gallagher, married one James Dennis. They lived together until 1862, when Mrs. Dennis saw him in this city for the last time. He disappeared. The wife made inquiries from friends. It was rumored he had gone to the war then being waged. In 1870 a "dead" letter came. It was not from Dennis; but his sister, who received it, said to the plaintiff, "If you had put up with him, he might have been a better man, and he would be living to-day." Thereupon the plaintiff and defendant met. She told him of the disappearance of Dennis, and, after a short acquaintance, and after consultation with Judge Stuart (who assured them that there was no obstacle to a legal ceremony), they were married at the Allen Street Methodist Church in 1871, each acting in good faith, and with a sincere belief that Dennis was dead. In 1878 a sister of Mrs. Taylor visited their home in this city, and announced that Dennis had really died. He did, in fact, die August 15, 1878. Thereupon the defendant said to this plaintiff: "It is a good thing he is gone. He ought to have gone long ago. Now, Kitty, that makes our marriage legal." It is conceded that from that time until 1884, and it is found as a fact that until 1889, if not thereafter, the plaintiff and defendant lived as man and wife, and the defendant contributed to some extent to plaintiff's support. Their relations were not always harmonious, and the defendant sometimes absented himself from home for short periods. In 1889 the defendant brought an action to recover some real property standing in the name of the plaintiff. Then he, upon oath, declared the plaintiff his lawful wife. Now, upon the trial of this action, the defendant admits that he has abandoned this plaintiff, and has refused to support her since 1886. It was agreed, therefore, that it was unnecessary to prove the acts of cruelty alleged in the complaint, and further agreed that, if the plaintiff should be entitled to a decree, a reference should be ordered to take proof to determine the amount of alimony to which she might be entitled.

Under the facts as they have been found, and the stipulations, it is clear that the plaintiff must be granted the relief prayed for, and

that Mr. Taylor's defense and his counterclaim must be declared unavailing. The disputed questions of fact are thus settled. No comment on the evidence or witnesses is necessary, except that James A. Dennis (plaintiff's stepson), with his flabby appearance, unsteady gait, and thick speech, was not credited by the court. His hardships and irregular habits of living had left their marks upon him, and had clearly impaired his memory and other mental faculties.

Now, as to the law of the case. The defendant contends that the marriage between the plaintiff and defendant in 1871 is absolutely void. 2 Rev. St. (Banks Bros.' 9th Ed.) pp. 1890, 1891. The plaintiff, then having a husband living, could not contract another marriage. This is true; but, if she honestly acted under the supposition that Dennis (who had absented himself for five successive years without being known by the plaintiff to be living during that time) was dead, she is protected by the statutes, and the marriage is voidable merely, —in other words, not void until so pronounced by a court of competent authority. But, assuming the finding of good faith on the plaintiff's part unwarranted, and disregarding the marriage of 1871, how is the defendant's position improved? In 1878, after the death of the first husband, the defendant became aware of it. Then he agreed with the plaintiff to live as man and wife. Thus we have a new and valid contract, if actual consent be necessary, without resorting to any pre-sumption of consent; which presumption is here clearly made out. Their relations, never intentionally meretricious, continued as there-tofore. They meant to be to each other man and wife. They held themselves out as such, and in January of each year, until 1889, gathered the family about them to celebrate the wedding anniversary. A perfectly legal, even if unceremonious, marriage, is thus clearly established. Let us suppose, however, that the defendant had sustained the issues sufficiently to defeat the plaintiff's claim for a separation, could the defendant, by counterclaim in this action, get affirmative relief, and have his marriage annulled? The learned counsel for the defendant argues strenuously in support of this position, but the argument is not convincing. The right to counterclaim in matrimonial actions is expressly given by section 1770 of the Code. That section confines the right of counterclaim to an action for divorce or a separation, and excludes an action to annul a marriage. But, says the defendant, the marriage sought to be annulled arises out of the same transaction, namely, the marriage upon which the plaintiff relies for an action of separation; citing the general code provision on the subject of counterclaim (section 501). By the complaint and reply the plaintiff relies on the ceremonial and the common-law marriage, and public policy requires that the court should compel her to rely on either, if either will sustain the marriage, even in the face of her counsel's disclaimer. The general provisions of the Code must be deemed to be overridden by the special provision which limits counter-claims in matrimonial actions. It may well be that, for greater con-venience and a complete determination between the parties, the coun-terclaim which seeks to annul a marriage should be allowed in this form of action; but that is a subject for the legislature, and not for the courts.

Another objection suggests itself to this defendant's attempt to counterclaim, namely, the death of Dennis. If the marriage between these parties dates from 1878, after Dennis' death, and the ceremonial marriage was a nullity, then there is no ground to annul the common-law contract. If the marriage dates back to 1871, when Dennis was living, can the defendant seek to annul it at this time, when Dennis has been dead 20 years? This is an interesting question, but not necessary to the decision of this case, and therefore it is merely stated without further comment.

This action was begun by the plaintiff in October, 1896. The defendant pleads the statute of limitation, which is 10 years. Code Civ. Proc. § 388. But under the findings that the parties continued to live together as man and wife until 1889, and that the defendant failed and refused to support her adequately after that time, the period required by the statute did not intervene. Let there be judgment of separation for the plaintiff, with costs. The alimony will be fixed upon the coming in of the report of the referee, who will take proof upon that question pursuant to the stipulation made at the trial.

Ordered accordingly.